THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERT SINCLAIR AND DETA SINCLAIR, Husband and wife and the marital community composed thereof,<br><br>              Plaintiffs,<br><br>     v.<br><br>HOME DEPOT, U.S.A., INC., a foreign corporation doing business in King County, Washington,<br><br>              Defendant. | CASE NO. C19-1971-JCC<br><br>ORDER |

This matter comes before the Court on Defendant's motion for a protective order (Dkt. No. 10). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion in part and DENIES the motion in part for the reasons explained herein.

I.    **BACKGROUND**

This litigation involves a slip-and-fall that occurred at Defendant's store in Shoreline, Washington. (*See* Dkt. No. 1 at 3.) Plaintiffs allege that on February 19, 2019, Plaintiff Robert Sinclair slipped on liquids on the floor of Defendant's store and injured himself. (*Id.* at 3–5.) Plaintiffs bring a claim for negligence against Defendant. (*Id.* at 5.) Plaintiffs filed a complaint in King County Superior Court on November 6, 2019. (*Id.*) Defendant removed the case on

1   December 3, 2019. (*Id.*)

2        On November 4, 2019, Plaintiff served interrogatories and requests for production

3   ("RFPs") on Defendant along with their complaint.[1] (Dkt. No. 10 at 2.) Both parties participated

4   in a Federal Rule of Civil Procedure 26(f) discovery conference on February 11, 2020. (*Id.*) After

5   the conference, Defendant responded to Plaintiffs' discovery requests by proposing a protective

6   order. (*See id.* at 3.) Defendant emailed Plaintiff on February 24, 2020, noting that it had

7   prepared the protective order and asking for Plaintiffs' approval to file it with the Court. (*See*

8   Dkt. No. 11 at 18.)  Plaintiffs declined to sign the protective order. (*Id.*) On March 10, 2020,

9   Defendant filed the instant motion. (*Id.*) Plaintiffs did not file a timely response. (*See* Dkt. No.

10   13.)[2]

11  **II.**    **DISCUSSION**

12        **A.**     **Legal Standard**

13        Under Federal Rule of Civil Procedure 26, "[t]he court may, for good cause, issue an

14   order to protect a party or person from annoyance, embarrassment, oppression, or undue burden

15   or expense." Fed. R. Civ. P. 26(c)(1). The party opposing public disclosure has the burden of

16   proving "good cause," which requires a showing "that specific prejudice or harm will result" if

17   the protective order is not granted. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130

---

18   [1] Plaintiffs' interrogatories and RFPs define several terms that are relevant here. "Premises"

19   means the property commonly known as Home Depot located at 1335 N 205th St., King County,
Shoreline, WA 98133. (Dkt. No. 11 at 8.) "'Incident' means the injury to [P]laintiff that occurred

20   on [D]efendant's Premises on February 19, 2019, and the events surrounding the injury
regardless of whether or not those events may have caused the injury. 'Incident' also includes the

21   events and actions relating to and following the injury on the Premises." (*Id.*)

22   [2] Motions for protective orders are noted for consideration on a Friday. *See* W.D. Wash. Local

23   Civ. R. 7(d)(2). Any opposing responses must be filed and received by the moving party by the
Wednesday before the noting date. *Id.* Defendant filed and served its motion on March 10, 2020.

24   (Dkt. No. 10.) Therefore, Plaintiff's response was due on Wednesday, March 18. But Plaintiffs
did not file and serve their response until Thursday, March 19. (*See* Dkt. No. 13.) Therefore,

25   Plaintiffs' response was untimely under Local Civil Rule 7(d)(2) and the Court declines to
consider it in ruling on Defendant's motion.

26

(9th Cir. 2003).

Protective orders require two considerations. *Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop)*, 661 F.3d 417, 424 (9th Cir. 2011). First, the court must determine whether "particularized harm will result from disclosure of information to the public." *Id.* at 1211. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). Rather, the person seeking protection from disclosure must "allege specific prejudice or harm." *See id.*

Second, if the court concludes that such harm will result from disclosure, then it must proceed to balance "the public and private interests to decide whether [maintaining] a protective order is necessary." *Phillips v. GMC*, 307 F.3d 1206, 1211 (9th Cir. 2002). Courts in the Ninth Circuit apply the factors set forth by the Third Circuit in *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995). *See Phillips*, 307 F.3d at 1211. These factors include whether: (1) the parties have an interest in privacy; (2) the information is being sought for a legitimate purpose or for an improper purpose; (3) there is a threat of serious embarrassment to a party; (4) the information is important to public health and safety; (5) the sharing of information among litigants would promote fairness and efficiency; (6) a party benefiting from the protective order is a public entity or official; and (7) the case involves issues important to the public. *Thompson*, 56 F.3d at 483.

### B.     Entry of Protective Order

Defendant requests that the Court enter a protective order for documents containing sensitive information about Defendant and its employees, as well as for documents that contain confidential business information. (Dkt. No. 10 at 4.) Specifically, Defendant seeks a protective order as to RFP Nos. 3, 4, 6, 7, 8, and 10, and Interrogatory No. 5. (*Id.* at 10.)

//

//

ORDER
C19-1971-JCC
PAGE - 3

1            1. <u>RFPs No. 3 and 7</u>

2          RFP Nos. 3 and 7 are similar and will be analyzed together. For RFP No. 3, Plaintiffs

3      request all documents relating to safety audits, inspections, or maintenance involving

4      slip/trip/fall hazard removal or abatement at the Premises. (*See* Dkt. No. 10 at 5.) For RFP No. 7,

5      Plaintiffs request all documents relating any actions taken to reduce the risk of slipping on liquid

6      on the Premises, including warnings, preventative measures, and any other remedial measures.

7      (*See id*. at 7.)

8          Defendant seeks a protective order for this information. (*See id.* at 6–7.) Defendant

9      argues it, including its agents and employees, could experience embarrassment or oppression if

10     this information is disclosed to the public. (*Id*.) Defendant also notes that the documents

11     requested relate to Defendant's internal inspections and maintenance of the store, and that

12     sharing these documents could give an unfair advantage to Defendant's retail competitors.  (*Id*.)

13     Defendant also argues that several of the *Thompson* factors weigh in favor of a protective order,

14     in part because Defendant is a private entity. (*Id*.)

15         Defendant sets forth sufficient "articulated reasoning" of a "particularized harm" to merit

16     a protective order as to RFP Nos. 3 and 7. *See Beckman*, 966 F.2d at 476. The release of its

17     proprietary information about store inspections and maintenance could allow competitors to

18     access this information. Further, the *Thompson* factors suggest that Defendant's privacy and

19     proprietary interests outweigh the public's general interest in accessing these documents. *See*

20     *Thompson*, 56 F.3d at 483.

21         Defendant argues that RFP Nos. 3 and 7 are overbroad and unduly burdensome because

22     they fail to specify a time limit; thus, Defendant asks that both RFPs be narrowed to a two-year

23     timespan. (Dkt. No. 10, at 6–7.) Defendant also argues that RFP No. 3 should be narrowed to

24     only encompass liquids, as opposed to all types of tripping hazards, (*see id*. at 6) and that RFP

25     No. 7 should be narrowed to substitute the phrase "warnings regarding slipping on liquid on the

26     floor" instead of the term "preventative measures," (*see id*. at 7).

ORDER
C19-1971-JCC
PAGE - 4

1    RFP Nos. 3 and 7 are overbroad in their failure to include a time limit but not in other

2    respects. Regarding the time limit, these requests place a heavy burden on Defendant: to produce

3    every pertinent document since the store's opening. This burden substantially outweighs the

4    benefit to Plaintiffs. For example, documents detailing a safety inspection from 20 years ago are

5    unlikely to be relevant to Plaintiffs' premises liability claims. And these documents will be

6    highly burdensome for Defendant to compile. However, a two-year time limit, as suggested by

7    Defendant, is too narrow, as "[r]elevant information is that which is 'reasonably calculated to

8    lead to the discovery of admissible evidence.'" *Brown Bag Software v. Symantec Corp.*, 960 F.2d

9    1465, 1470 (9th Cir. 1992); (Dkt. No. 10 at 5). Accordingly, the Court finds that a five-year time

10   limit is reasonably calculated to allow Plaintiffs to conduct a factual investigation of Defendant's

11   safety practices. This limit also ensures that Defendant is not unduly burdened.

12       With regard to Defendant's other arguments, the Court finds that RFP Nos. 3 and 7 are

13   sufficiently narrow as written. Information about other types of tripping hazards beyond liquids

14   may well be relevant to Plaintiffs' claims. For RFP No. 7,[3] the term "preventative measures" is

15   preceded by the phrase "slipping on liquid," and thus Defendant's requested alteration is

16   unnecessary. Therefore, Defendant's request for a protective order attached to RFP Nos. 3 and 7

17   is GRANTED. Defendant's request to narrow RFP Nos. 3 and 7 is GRANTED in part and

18   DENIED in part.

19       2.   RFP No. 4

20       RFP No. 4 seeks all documents relating to policies and procedures pertaining to the

21   identification, maintenance, clean-up, or abatement of slip/trip/fall hazards at the Premises. (*Id.*

22   at 8.) Defendant argues that documents subject to this request contain its proprietary business

23   information and that good cause exists for a protective order restricting their release. (*Id.*)

24

25   [3] RFP No. 7 seeks: "[a]ll documents relating to actions taken by anyone to reduce the risk of
     slipping on liquid on the premises, to warn, or take other preventative measures to protect tenants
26   or users of your store including but not limited to any remedial measures." (Dkt. No. 10 at 7.)

1    In support of its argument, Defendant cites *Hill v. Xerox Corp.*, C12–0717–JCC, Dkt. No.

2    113 (W.D. Wash. 2014). *Hill* involved information about the "operational details of . . . call

3    centers," including "numerous details about the employee compensation plan and how the call

4    centers . . . [were] operated." *Id.* at 3–4. The moving party argued that the documents contained

5    competitively sensitive information that had little public value, beyond the inherent "value of

6    having any court records be publicly available." *Id.* The Court agreed with the moving party,

7    finding that there was "good cause" for a protective order. *Id.*

8        *Hill* guides the Court's analysis of RFP No. 4. Defendant characterizes its slip-and-fall

9    policies as part of its "innovative business practices and operations." (Dkt. No. 12 at 3.) Indeed,

10   the request would "require Home Depot to produce its Standard Operating Procedures ("SOPs"),

11   training materials, performance evaluations, wage, pricing, and benefit information, and

12   contracts." (*Id.*) This information is analogous to that in *Hill* because it contains details that

13   Defendant has an interest in shielding from its competitors and in which the general public

14   would find little value. Therefore, Defendant's request for a protective order on documents from

15   RFP No. 4 is GRANTED.

16               3.   RFP No. 6

17       RFP No. 6 requests "documents evidencing any contact between Defendant and any

18   maintenance service from February 1, 2019, through the present time." (Dkt. No. 10 at 9.)

19   Defendant argues that the request is overbroad and irrelevant because it is unduly burdensome

20   and unlikely to lead to relevant information, and thus seeks to strike the request entirely. (*Id.*)

21       It is more appropriate to narrow this request than to strike it. Information about

22   Defendant's contact with any maintenance service who helped mitigate liquid on its floor

23   immediately before or after Plaintiff Robert Sinclair's injury may be relevant to Plaintiffs' claims

24   and would likely not be unduly burdensome for Defendant to produce. *See* Fed. R. Civ. P.

25   26(b)(1). Accordingly, narrowing the request to only maintenance services that are "related to

26   the Incident," as defined in the interrogatories, strikes the appropriate balance between the

ORDER
C19-1971-JCC
PAGE - 6

1   parties. Therefore, Defendant's request to strike RFP No. 6 is DENIED.

2       4.   Interrogatory No. 5 and RFP No. 8

3       Interrogatory No. 5 asks Defendant to "[i]dentify and describe: (a) incidents, incidents,

4   injuries or accidents similar to the Incident alleged in Plaintiff's Complaint; (b) any complaints

5   or concerns expressed by anyone about the risk [sic] spilled liquid at the premises during the

6   month [sic] of January and February 2019, including but not limited to notices of claims,

7   demand, or lawsuits related to injuries related to spilled liquid on floors in the defendant's

8   premises." (Dkt. No. 10 at 13.) RFP No. 8 requests all documents related to Interrogatory No. 5.

9   (*Id.*)

10       Defendant first argues that subpart (a) of Interrogatory No. 5 does not ask for information

11   relevant to the Incident and is overbroad because it is not limited in scope, time, or to a specific

12   store location. (*Id.*) Defendant therefore seeks to limit the interrogatory and related RFP to the

13   information sought in subpart (b), and also argues that it should only be required to produce

14   information about complaints raised directly to Defendant. (*Id.*) Subpart (a) is indeed overly

15   broad, as it fails to specify a time, location, or any other qualifying information. The request risks

16   creating a substantial burden for Defendant to produce information that is of little relevance to

17   Plaintiff's claims. But subpart (a) may capture relevant information beyond the scope of subpart

18   (b); therefore, instead of striking Interrogatory No. 5 and RFP No. 8 entirely, subpart (a) shall be

19   modified to state in relevant part: "(a) incidents, injuries, or accidents similar to the Incident

20   alleged in Plaintiff's Complaint that occurred at the Premises during the months of January and

21   February 2019."

22       Defendant next argues that the protective order should allow it to redact personal

23   information, including names and contact information, from discovery responsive to subpart (b).

24   The Court recognizes the importance of protecting the privacy of individuals unrelated to this

25   litigation. *See Naini v. King Cty. Pub. Hosp. Dist. No. 2*, C19-0886-JCC, Dkt. No. 110 at 4

26   (W.D. Wash. 2019). Therefore, the protective order shall ensure that the names and personal

1   contact information in any documents produced under Interrogatory No. 5 and RFP No. 8 will be
2   subject to confidentiality protections. Accordingly, Defendant's requests to modify Interrogatory
3   No. 5 and RFP No. 8 and for a protective order are GRANTED.

4          5.   <u>RFP No. 10</u>

5         Lastly, RFP No. 10 requests "employee personnel files, except portions related to health
6   insurance, of employees involved in the Incident, including but not limited to (a) employee(s)
7   who had managerial or supervisory responsibility in relation to the premises at the time of the
8   Incident regardless of whether they may have been on duty." (Dkt. No. 10 at 10.) Defendant
9   argues that because RFP No. 10 seeks sensitive employee information, which is personal and not
10  widely known, the disclosure of this information may embarrass, annoy, and harass these
11  employees. (*Id.*) Therefore, Defendant seeks to strike the request or for a protective order
12  prohibiting the general release of this information. (*Id.* at 11.)

13        The Court has previously taken special precautions regarding the discovery of personnel
14  files. *See, e.g.*, *Naini*, Dkt. No. 110, at 3 (citing *Blotzer v. L-3 Communs. Corp.*, 287 F.R.D. 507,
15  510 (D. Ariz. 2012)) ("Personnel files may contain information that is both private and irrelevant
16  to the case, therefore special care must be taken before personnel files are turned over to an
17  adverse party."). In *Naini*, the Court noted that "while private aspects of a person's employment
18  history are discoverable if relevant . . . there must be an 'objective basis' to believe that those
19  aspects might be relevant." *Id.* at 4. The Court held that the plaintiff had failed to provide an
20  "objective basis" for finding that the employee files at issue were relevant to the plaintiff's
21  claims. *Id.*

22        Here, Plaintiffs have similarly failed to provide an "objective basis" to believe that the
23  employee personnel files sought by RFP No. 10 are relevant to their claims. Plaintiffs' complaint
24  makes no mention of any "manager" or "supervisor." (*See* Dkt. No. 1-1.) While some parts of the
25  personnel files at issue may contain information relevant to Plaintiffs' claims, the "this Court
26  will not allow . . . [Plaintiffs] to invade people's privacy in the hope that something relevant

turns up." *Naini v. King Cty. Pub. Hosp. Dist. No. 2*, C19-0886-JCC, Dkt. No. 109 at 11 (W.D. Wash. 2019). Further, any documents that are relevant, such as reports discussing an employee's involvement in the Incident, are likely obtainable through Plaintiffs' other interrogatories and RFPs discussed herein. Therefore, Defendant's request to strike RFP No. 10 is GRANTED.

## III.   CONCLUSION

For the foregoing reasons, Defendant's motion for a protective order (Dkt. No. 10) is GRANTED in part and DENIED in part. The Court hereby ENTERS the following protective order:

### A.   Designation of Confidential Information

1. *Designation of Material*. Documents and other things claimed to be or to contain Confidential Information shall, prior to production, be marked by the producing party as "Confidential." Placement of the "Confidential" designation on each protected page or on the initial page of a protected document when it is produced shall constitute notice and shall designate the document as confidential material. Copies, extracts, summaries, notes, and other derivatives of confidential material also shall be deemed confidential material and shall be subject to the provisions of this order.

2. *Subsequent Designation*. Documents and/or materials produced in the litigation that are not identified as confidential when they were initially produced may within a reasonable time thereafter be designated as confidential by the producing party, or by the party or parties receiving the production, or by a person, by providing written notice to counsel for all other parties and to any person who may be involved. Each party or person who receives such written notice shall endeavor to retrieve any confidential Information that may have been disseminated, shall affix a "Confidential" designation to it, and shall thereafter distribute it only as allowed by this order. No distribution prior to the receipt of such written notice shall be deemed a violation of this order.

//

3. *Designation of Depositions*. Depositions or portions of thereof upon oral or written questions may be classified as confidential material either by an examining party's attorney or by an attorney defending or attending the deposition. A party claiming that a deposition or any portion thereof is confidential shall give notice of such claim to the affected parties and persons either prior to or during the deposition, or within 28 days after receipt of the deposition transcript, and the testimony taken and the transcript of such deposition or portion thereof shall be designated as "Confidential."

4. *Allowed Designation*. Home Depot may designate any materials or information produced pursuant to the following requests as "Confidential":

    (a)    Plaintiffs' Request for Production No. 3.

    (b)    Plaintiffs' Request for Production No. 4.

    (c)    Plaintiffs' Request for Production No. 7.

    (d)    Plaintiffs' Request for Production No. 8.

    (e)    Plaintiffs' Interrogatory No. 5, subpart (b).

### B.    Access to Confidential Information

5. *General Access*. Except as otherwise expressly provided herein or ordered by the Court, confidential material may be revealed only as follows:

    (a)    To outside counsel for a party hereto (and secretaries, paralegals, and other staff employed in the offices of such outside counsel who are working on the litigation), provided that outside counsel who are not of record must agree to be bound by this order in writing prior to receipt of any confidential material.

    (b)    To the parties after they have been given a copy of this order.

    (c)    To court reporters transcribing a deposition, hearing, or other proceeding in this matter.

    (d)    To independent experts and independent consultants (meaning a person who is not an employee, officer, director, or owner in any capacity of a party and who is

retained, or may be retained, by a party or a party's outside counsel in good faith for the purpose of assisting in this litigation).

6. *No Copies/Notes*. Except for internal use by outside counsel for the parties hereto, for Court and deposition copies, and for such use as is expressly permitted under the terms hereof, no person granted access to confidential material shall make copies, reproductions, transcripts, or facsimiles of the same or any portion thereof or shall take notes or otherwise summarize the contents of such confidential material.

7. *Amendments to Rights of Access*. Nothing in this order shall prejudice any party from seeking amendments to expand or restrict the rights of access to and use of confidential material or other modifications, subject to order by the Court.

8. *Dispute over Access*. If a dispute arises as to whether a particular person should be granted access to confidential material, the party seeking disclosure may move the Court to permit the disclosure and must obtain an order of the Court before disclosing the information.

### C.     Use of Confidential Information

9. *Use in this Litigation Only*. Confidential material may be used only for purposes of this litigation. Each person to whom the disclosure of any confidential material is made shall not, directly or indirectly, use, disclose, or disseminate, or attempt to use, disclose, or disseminate, any of the same except as expressly provided herein.

10. *Use at Depositions*.  If confidential material is to be discussed or disclosed during a deposition, the producing party shall have the right to exclude from attendance at the deposition, during the time the confidential material is to be discussed, any person not entitled under this order to receive the confidential material.

11. *Use at Court Hearings and Trial*. Subject to the Federal Rules of Evidence, confidential material may be offered into evidence at trial or at any hearing or oral argument, provided that the proponent of the evidence containing confidential material gives reasonable advance notice to the Court and counsel for the producing or designating party. Any party may

move the Court for an order that the evidence be reviewed *in camera* or under other conditions to prevent unnecessary disclosure. If presented at trial, the status of evidence as confidential material shall not be disclosed to the finder of fact.

12. *Filing Under Seal*. Each document filed with the Court that contains confidential material shall be filed in a sealed envelope or other appropriate sealed container on which shall be set forth the title and number of this action, a general description or title of the contents of the envelope, and a statement that the contents are "Confidential" and subject to this order and that the envelope is not to be opened nor the contents thereof reveled except to counsel of record in the litigation or court personnel, or pursuant to order of the Court. Copies of such documents served on counsel for other parties shall be marked as "Confidential."

13. *Reasonable Precautions*. Counsel for each party shall take all reasonable precautions to prevent unauthorized or inadvertent disclosure of any confidential material.

14. *Return after Litigation*. Within 30 days of the final termination of this litigation by judgment, appeal, settlement, or otherwise, or sooner if so ordered by the Court, counsel for each party shall return to counsel for the party who furnished the same or destroy all documents claimed to be or to contain confidential material which had been marked by the producing party as "Confidential."

15. *Not an Admission*. Nothing in this order shall constitute an admission by the party that information designated as "Confidential" is actually confidential material. Furthermore, nothing contained herein shall preclude the parties or a person from raising any available objection or seeking any available protection with respect to any confidential material, including but not limited to the grounds of admissibility of evidence, materiality, trial preparation materials, and privilege.

16. *Waiver*. This order shall not constitute a waiver of any party's or non-party's right to oppose any discovery request or object to the admissibility of any document, testimony, or other information.

17. *Survival*. This order shall survive the final termination of this action, to the extent that the information contained in confidential material is not or does not become known to the public, and the Court shall retain jurisdiction to resolve any dispute concerning the use of information disclosed hereunder.

18. *Miscellaneous*. This order shall apply to the production of all materials whether or not such materials are informally produced or are produced in response to a formal discovery request or a Court order in this litigation. This order may be used to protect the confidentiality of the residential addresses and social security numbers of the parties and of any and all current or former employees of either of the parties or their affiliates.

### D.    Narrowed Discovery Requests

The following discovery requests are limited as stated below to prevent undue burden and the disclosure of irrelevant and private information. Home Depot must only produce documents responsive to the request for production as written below, all of which are governed by the terms of this order:

19. *Request for Production No. 3*: All documents relating to any audits, inspections, safety surveys or maintenance of the Premises relating to slip/trip/fall hazard removal or abatement at the Premises for five years prior to the Incident.

20. *Request for Production No. 7*: All documents relating to actions taken by anyone to reduce the risk of slipping on liquid on the Premises, to warn, or to take other preventative measures to protect tenants or users of your store including but not limited to any remedial measures, for five years prior to the Incident.

21. *Request for Production No. 6*: All documents evidencing contact between Home Depot and any maintenance service which is related to the Incident, from February 1, 2019, through the present time.

22. *Interrogatory No. 5*:  Identify and describe: (a) incidents, injuries, or accidents similar to the Incident alleged in Plaintiff's Complaint that occurred at the Premises during the months of

January and February 2019; (b) any complaints or concerns expressed by anyone about the risk spilled liquid at the Premises during the months of January and February 2019, including but not limited to notices of claims, demand, or lawsuits related to injuries related to spilled liquid on floors in Defendant's Premises.

23. *Request for Production No. 10*: RFP No. 10 is prohibited.

DATED this 15th day of April 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE